**Sherman SIMON, Jr., Individually and as next friend of his minor children, Peter Darnell Simon and Keenan Simon, etc., Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 88–2141.**

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1990.

Olen Kenneth Dodd, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Beaumont, Tex., Anthony R. Sherr, Torts Branch, Civil Div., Dept. of Justice, Robert S. Greenspan, Civil Div., Appellate Staff, Dept. of Justice, Washington, D.C., for defendant-appellant.

Richard Clarkson, Gilbert T. Adams, Jr., Beaumont, Tex., for plaintiff-appellee.

W.V. Dunnam, Jr., Waco, Tex., for amicus curiae Eugene and Dora Owen.

Before CLARK, Chief Judge, BROWN and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

A judgment for $1,061,656.01 was entered against the United States under the Federal Tort Claims Act in a suit for medical malpractice brought by the family of a patient who died after surgery at an Army hospital in Louisiana. The United States filed a motion to alter or amend the judgment, claiming that the Louisiana Medical Malpractice Act, which limits to $500,000 the damages that can be recovered for medical malpractice, applies to suits against the United States under the Federal Tort Claims Act. The United States appeals from the judgment and the district court's denial of its motion to alter or amend.

After briefing and oral argument, we took no further action in this case pending the Louisiana Supreme Court's ruling on the constitutionality of the Louisiana Medical Malpractice Act under the Louisiana Constitution. When, however, the Louisiana Supreme Court ruled in that case, *Williams v. Kushner*, 549 So.2d 294 (La. 1989), it held that the constitutionality of the $500,000 limitation on recovery was not properly before the court.[1]

Now our further research and closer review of the proceedings in this case has convinced us that a procedural bar precludes the application of the statutory limitation. We hold that, because the United States did not raise the issue in the trial court in a timely manner, the United States waived any defense that may have been available to it under the Louisiana Medical Malpractice Act. Our disposition of this case therefore makes it unnecessary for us to consider the issues of whether the Louisiana act applies to suits against the government under the Federal Tort Claims

---

**1.** "The Louisiana statutory scheme places a $100,000 maximum on the health care provider's liability and provides a $400,000 supplemental amount available to each person payable from the state operated Patient's Compensation Fund, thus limiting recovery to a total of $500,-000." *Williams,* 549 So.2d at 296. The Patient's Compensation Fund is funded through annual surcharges levied on all qualified health care providers. La.Rev.Stat.Ann. 40:1299.44(A) (West 1977 & Suppl.1988). The Louisiana Supreme Court held that the $400,000 limitation on recovery from the Patient's Compensation Fund did not violate the Louisiana Constitution, but the court did not consider the constitutionality of the $100,000 limitation on recovery against a qualified health care provider.

Act and whether the Louisiana act is constitutional.

## I

On August 14, 1985, Rene B. Simon entered the Bayne–Jones Army Community Hospital at Fort Polk, Louisiana, for a right thyroid lobectomy. As a result of the operation, she sustained injuries resulting in brain death. Seven days later, she was removed from her respirator and allowed to die.

## II

Mrs. Simon's husband, Sherman Simon, Jr., brought a suit for wrongful death against the United States under the Federal Tort Claims Act ("FTCA"), on behalf of Mrs. Simon's estate, himself, and their two children. Mrs. Simon's father, Jesse Boudreaux, Jr., was initially named as a plaintiff. Prior to trial, the United States successfully moved for summary judgment against Boudreaux on the grounds that Louisiana law applied and barred the claims of a father for the death of a child where the child was survived by a spouse or children.

The United States stipulated to its liability, and a bench trial was held, limited to the issue of damages. The district court awarded Simon $1,061,656.01, none of which was for medical expenses.

The United States then filed a motion to alter or amend the district court's judgment under Fed.R.Civ.P. 59(e) on the ground that the FTCA incorporates the provisions of the Louisiana Medical Malpractice Act, which limits to $500,000 the damages (exclusive of medical expenses) that can be recovered for medical malpractice. The district court denied the motion, and the United States appeals.

## III

Although both parties argue the applicability and constitutionality of the Louisiana

Medical Malpractice Act as well as the procedural issue, we address only the procedural issue. Simon argues that we need not consider the merits because, irrespective of the applicability of the limitation statute in this case, the United States waived such defense by failing to assert that defense in pleadings, in the pretrial order, at the pretrial conference, or at trial. The United States argues that it did not waive the defense because it described the Louisiana limitation in a motion for summary judgment, the issue was encompassed in the pretrial order, and the defense was raised in a timely motion to alter and amend the judgment.

## A

■ Although state substantive law applies in suits brought under the FTCA, "the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Morgan Guaranty Trust Co. v. Blum,* 649 F.2d 342, 345 (5th Cir.1981). This court has not previously considered whether the Louisiana limitation on malpractice damages is an affirmative defense within the meaning of Fed.R.Civ.P. 8(c), but our court has previously held that a Texas statute limiting recovery in malpractice actions is an affirmative defense. *Lucas v. United States,* 807 F.2d 414 (5th Cir.1986); *Ingraham v. United States,* 808 F.2d 1075 (5th Cir.1987). *See also Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810 (1st Cir.1975) (statutory limitation on liability is an affirmative defense under Rule 8(c)). *But cf. Taylor v. United States,* 821 F.2d 1428, 1433 (9th Cir.1987), *cert. denied,* 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988) (California statutory limitation on noneconomic damages in actions based on professional negligence "is a limitation of damages rather than an affirmative defense").[2]

---

**2.** In *Taylor,* the United States asserted the California statutory limitation for the first time in a Rule 59(e) motion. The Ninth Circuit held that the government raised the defense at a "pragmatically sufficient time" and that the plaintiff

suffered no prejudice because of the government's delay in asserting the statute. *Id.* at 1433. The court recognized, however, that application of the statute might, in some instances, require resolution of factual issues and that, in

off

■] Our precedent in *Ingraham* regarding the Texas statute compels the conclusion that the Louisiana limitation is also an affirmative defense because it is an "avoidance" within the meaning of Rule 8(c). An avoidance in pleadings is an "allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect." *Ingraham*, 808 F.2d at 1079 (quoting Black's Law Dictionary, 5th ed. 1979). As our court noted in *Ingraham*, "[a]pplied to the present discussion, a plaintiff pleads the traditional tort theory of malpractice and seeks full damages. The defendant responds that assuming recovery is in order under the ordinary tort principles, because of the new statutory limitation, the traditional precedents 'should not have their ordinary legal effect.'" 808 F.2d at 1079. We therefore conclude that the Louisiana limitation on malpractice damages is an affirmative defense.

Fed.R.Civ.P. 8(c) requires affirmative defenses to be set forth in a defendant's responsive pleading. Failure to comply with Rule 8(c) usually results in a waiver. *Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982, 990 n. 11 (5th Cir.1984). If, however, a defendant raises the issue at a "pragmatically sufficient time," and if the plaintiff is not prejudiced in its ability to respond, there is no waiver of the defense. *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986). *See Bull's Corner Restaurant v. Director, Federal Emergency Management Agency*, 759 F.2d 500, 502 (5th Cir. 1985) (citation omitted) (where an affirmative defense "is raised in the trial court in a manner that does not result in unfair suprise ... technical failure to comply precisely with Rule 8(c) is not fatal").

## B

### (1)

■] Admitting that it did not plead the Louisiana malpractice limitation as an af-

firmative defense in its answer, the United States contends that, nevertheless, the defense was not waived because the limitation was described in a pretrial motion for summary judgment. On May 20, 1987, four months before trial, the United States filed a motion for summary judgment against Jesse Boudreaux, Jr., Rene Simon's father, on the ground that, under La.Civ. Code art. 2315, he could not recover damages for the death of his daughter because she was survived by her spouse and children. Pursuant to art. 2315, a parent of a decedent has no cause of action for wrongful death if the decedent leaves a surviving spouse or child. In arguing successfully that Louisiana law applied, the United States relied on Louisiana's "strong interest in regulating the liability of medical health care providers within its state to insure the continued availability of medical care." In order to illustrate that state interest, the United States went on to describe the Louisiana malpractice statute in detail:

> Louisiana has a comprehensive medical malpractice statutory scheme, which among other things, limits the amounts recoverable, exclusive of future medical expenses, in a medical malpractice action to a total of $500,000. Louisiana Revised Statutes 40 § 12[9]9.41. The purpose of the statutes which regulate medical malpractice actions was explained by the Louisiana Supreme Court: "We find this enactment rationally related to an appropriate governmental interest, the guarantee of continued health care services for our citizens at reasonable cost."[] *Everett v. Goldman*, 359 So.2d 1256, 1266 (La.1978). Surely, this demonstrates the important interests Louisiana has in medical malpractice cases which occur within its borders. The Louisiana legislature found that health care services for all people were in jeopardy. In response, they adopted their medical malpractice statutory scheme. Therefore, Louisiana's compelling interest must prevail

such cases, plaintiffs might be prejudiced if defendants did not raise the statute prior to judg-

ment.

over any interest that Texas may have in the present case.

Although the description of the Louisiana malpractice statute, including the $500,000 limitation, was perhaps central to the·government's argument that Louisiana law should apply, the malpractice act's limitation on recovery had no bearing on the merits of the motion itself. The plaintiffs did not oppose the motion, and never contested the applicability of Louisiana law. Thus, the government's description of the malpractice limitation in its motion for summary judgment against Rene Simon's father was not sufficient to give notice to the remaining plaintiff or the court that the government, which had not met the statutory requirements of the Louisiana act,[3] intended to claim the benefit of the statutory limitation to limit its liability to $500,000.

### (2)

■ Next, the United States contends that its limitation defense was not waived because the limitation was "clearly encompassed" within the pretrial order. The United States contends that the pretrial order continued to inform the plaintiff that the amount of the government's liability remained in issue. Although we agree that the amount of the government's liability was in issue throughout the litigation, we do not agree with the government's contention that the malpractice limitation on damages was raised as an issue in the pretrial order. The pretrial order listed among the "Contested Issues of Fact" "[t]he amount of actual damages" and among the "Contested Issues of Law" "[t]hose issues of law implicit in the factual issues." The order also contained a stipulation "[t]hat Louisiana law applies to both liability and damages." These general statements do not suffice to preserve the issue of the malpractice limitation. There is nothing in these statements that gives notice to the plaintiff or to the court that the government intended to claim the benefit of the

statutory limitation. Once a pretrial "order is entered, it controls the scope and course of the trial.... If a claim or issue is omitted from the order, it is waived." *Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982).

"The purpose of Rule 8(c), like the purpose of the requirement that the pretrial order contain all relevant claims and legal theories, is to inform the court and the parties how the case will be tried." *Morris v. Homeco International,* 853 F.2d 337, 342 (5th Cir.1988). Prior to the entry of judgment, the United States took no action to inform the court or Simon that it would attempt to claim the benefit of Louisiana's malpractice limitation. Because the United States had not complied with the statutory requirements for protection imposed by Louisiana's medical malpractice act, and did not assert the issue in its answer or in the pretrial order, the district judge and Simon had every right to assume that the United States did not intend to claim the benefit of the statutory limitation on liability. Moreover, the focus and the character of the trial would have been quite different had the government raised its defense based on the Louisiana Medical Malpractice Act prior to trial, to the extent that much of the evidence and argument would have been directed to matters not even touched upon in the bench trial in this case that only concerned the amount of the damages suffered.

### (3)

■ Finally, the United States contends that it raised the issue at a "pragmatically sufficient time" in its Rule 59(e) motion to alter or amend the judgment.

In *Lucas v. United States,* 807 F.2d 414 (5th Cir.1986), this court held that the United States did not waive its argument under the Texas malpractice statute when it failed to plead the statute as an affirmative defense because the issue was raised at trial, the applicability of the Texas statu-

---

**3.** In order to qualify under the Act, a private health care provider is required to: (1) file with the state commissioner of insurance "proof of financial responsibility"; and (2) pay a "sur-

charge" which is assessed to maintain a "Patient's Compensation Fund." La.Rev.Stat.Ann. 40:1299.42(A) (West 1977 & Supp.1988).

tory cap was a purely legal issue that could be resolved without the need for factual proof, and the plaintiffs were not prejudiced in their ability to respond.

*Lucas,* however, was distinguished in *Ingraham v. United States,* 808 F.2d 1075 (5th Cir.1987). In *Ingraham,* the government did not invoke the Texas malpractice limitation in pleading or at trial. The limitation was not raised in a Rule 59 motion to amend the judgment, but was first asserted in a "motion for reconsideration" filed by the government three months after entry of the judgment. The government did not appeal from the district court's denial of its "motion for reconsideration," and the correctness of the ruling on that motion was not before the court on appeal. The plaintiffs in *Ingraham* argued that they were prejudiced by the government's failure to plead the statutory limitation as an affirmative defense because, had they known the statute would be applied, they would have made greater efforts to prove medical damages that were not subject to the statutory limit, and would have had an incentive to introduce evidence to support their constitutional attacks on the statute. Our court held that, because the defense was not raised at trial, the defense had been waived.

Here, we also conclude that the United States did not raise its defense based on the Louisiana statute at a "pragmatically sufficient time." The applicability of the Louisiana statute involves more than just a pure issue of law and, as we have already noted, had the issue been raised prior to trial, or during the trial, it would have been a major issue, indeed perhaps the predominant issue, and the character of the trial would have been different. Moreover, in *Sibley v. Board of Supervisors of Louisiana State University,* 477 So.2d 1094, 1109 (La.1985), the Louisiana Supreme Court held that the proponent of the constitutionality of the Louisiana Medical Malpractice Act has the burden of proving that "there is a good reason for the statutory classification, that is, that the legislative classification substantially furthers a legitimate state purpose." As the Fourth Circuit Court of Appeal of Louisiana has noted,

"[b]ecause the proponents must show that the legislature reasonably believed that the means it chose would substantially further the State's interest, [the court] must closely examine the facts and premises the legislature considered before enacting [the statute]." *Williams v. Kushner,* 524 So.2d 191, 194 (La.App.1988), *amended and aff'd,* 549 So.2d 294 (La.1989). Thus, the constitutionality of the Louisiana statute under the Louisiana Constitution depends upon resolution of factual issues which were not presented at trial, but rather were raised for the first time after trial in the United States' Rule 59(e) motion.

We review the denial of a Rule 59(e) motion only for abuse of discretion. *Batterton v. Texas General Land Office,* 783 F.2d 1220, 1225 (5th Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). Defenses not raised or argued at trial are ordinarily waived by the parties failing to raise them. *Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1458 (5th Cir.1987). "Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986) (citations omitted).

We therefore conclude that the United States' argument that it is entitled to the Louisiana Medical Malpractice Act's limitation on liability could, and should, have been made at some point before the entry of judgment. Because the government did not claim that it was entitled to the benefit of the limitation on damages until after the judgment was entered, we conclude that the government waived that defense, and hold that the trial court did not abuse its discretion in denying the government's motion to alter or amend the judgment.

## IV

For the foregoing reasons, the judgment of the district court, and its order denying

the United States' motion to alter or amend the judgment are

AFFIRMED.